UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

APPROXIMATELY $1,252,999.00 FORMERLY ON DEPOSIT IN ACCOUNT NUMBER 30000218917 AT CITY NATIONAL BANK HELD IN THE NAME OF SPITE THE MOVIE, LLC,

    Defendant *In Rem*.

_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff, the United States of America (the "United States"), by and through its undersigned counsel, to allege upon information and belief as follows:

### I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C), and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure, to forfeit the following asset that constitutes proceeds of wire fraud and bank fraud: approximately $1,252,999.00 formerly on deposit in account number 30000218917 at City National Bank held in the name of Spite the Movie, LLC (the "Defendant Funds").

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1)(C).

3. This Court has *in rem* jurisdiction over the Defendant Funds. *See* 28 U.S.C. §§

Case 1:23-cv-22152-XXXX   Document 1   Entered on FLSD Docket 06/09/2023   Page 2 of 9

1345, 1355(a).

4.      Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District in which the related criminal prosecution was brought.  *See* 28 U.S.C. § 1355(b)(1); 18 U.S.C. § 981(h).

5.      All dates and amounts in this complaint are approximate.

### III. FACTUAL ALLEGATIONS

At all times material to this action:

#### A. Overview of the Paycheck Protection Program

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In April 2020, Congress authorized over $300 billion in additional PPP funding.

7.      In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must have stated, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was

eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must have provided documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

8.  A PPP loan application must have been processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.  In the ordinary course of providing the loan guaranty, neither the SBA nor any other government agency checked IRS records to confirm that the applicant had paid the payroll taxes represented in the PPP applications.

9.  The SBA required applicants to submit a Form 2483 to obtain a loan under the PPP. This form required applicants to identify the average monthly payroll and number of employees. The form also required a certification (a) that the applicant "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes"; (b) that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant"; and (c) that "[t]he funds [would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under" the PPP.

### B. PPP Loan Applications submitted by Uzoamaka Leonard Ohaebosim

#### i. *Loan Application to Financial Institution 1*

10.  On April 24, 2020, Uzoamaka Leonard Ohaebosim ("Ohaebosim") filed a PPP loan application with Financial Institution 1 on behalf of his business, Spite the Movie, LLC ("STM"), ("Loan Application 1").  As part of Loan Application 1, Ohaebosim submitted documentation

claiming that STM had 104 employees and an average monthly payroll of $501,222.33.

11. As part of Loan Application 1, Ohaebosim also submitted checks purportedly paid to employees that were dated April 2, 2020. However, these checks appear to have been fraudulent. For example, Ohaebosim submitted a check purportedly from Financial Institution 2 for STM in the amount of $7,217.42 for J.L. at an address in California. Law enforcement contacted J.L. regarding this check, and J.L. stated that J.L. had not received this check or any checks relating to STM.

12. Also, as part of Loan Application 1, Ohaebosim submitted a monthly statement from Financial Institution 2 for April 2020. This monthly statement was in the name of HOTB the Movie LLC, not STM, and showed total monthly activity of less than $500.

13. Financial Institution 1 declined to fund Loan Application 1.

### ii. Loan Application to City National Bank

14. In late April 2020, Ohaebosim also submitted documents for a PPP loan application with City National Bank ("CNB"),[1] seeking a $1.25 million loan for STM ("Loan Application 2"). CNB was headquartered in Miami, Florida, which is within the Southern District of Florida.

15. In May 2020, Ohaebosim opened account number 30000218917 at CNB held in the name of STM (the "STM Account").

16. As part of Loan Application 2, Ohaebosim provided CNB with an IRS Form 941 (employer's quarterly federal tax return) purportedly for the first quarter of 2020. Employers use this form to report payroll taxes—such as income tax, social security tax, or Medicare tax—withheld from employees' paychecks. The IRS Form 941 stated that STM had 104 employees, had paid $983,117 in wages, and withheld $122,945 in federal income taxes during the first quarter

---

[1] CNB was federally insured by the Federal Deposit Insurance Corporation.

of 2020.  The IRS Form 941 contained a digital signature for Ohaebosim.

17. The IRS retains records of all its Form 941s.  Based on a review of IRS records, STM has never submitted a Form 941 to the IRS.

18. Also, as part of Loan Application 2, on May 12, 2020, Ohaebosim digitally signed and submitted an SBA Form 2483.  In this SBA Form 2483, Ohaebosim certified that STM had an average monthly payroll of $501,222.33 and sought a loan amount of $1,253,055.82.

19. Ohaebosim initialed by electronic signature a representation that the information in the application was "true and accurate in all material respects."  Ohaebosim acknowledged that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including . . . under 18 USC 1014 by imprisonment of not more than thirty years."

20. As a result of Loan Application 2, on June 11, 2020, a PPP loan of $1,252,999.00 was deposited into the STM Account.

21. The STM Account had no balance prior to the deposit of the PPP loan and had no other activity after the PPP loan disbursement.

22. On July 31, 2020, the United States seized the Defendant Funds, which were on deposit in the STM account, pursuant to a seizure warrant issued by the Honorable Magistrate Judge John J. O'Sullivan.  *See* 20-MJ-03282- O'Sullivan.

### C. Related Criminal Case

23. On September 11, 2020, the United States obtained a criminal complaint against Ohaebosim.  *See* 20-MJ-20109-Becerra.

24. On March 23, 2022, a Federal Grand Jury returned an Indictment charging Ohaebosim in Count 1 with wire fraud in violation of 18 U.S.C. § 1343 and in Count 2 with false

statement to a Government agency in violation of 18 U.S.C. § 1001.  Indictment, 22-cr-20109-Williams, ECF No. 4.

25. On October 26, 2022, the Court accepted the Defendant's guilty plea to Count 2 of the Indictment.  *See* Minute Entry, 22-cr-20109-Williams, ECF No. 36; Plea Agreement ¶ 1, ECF No. 37.

26. In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction.  *See* 22-cr-20109-Williams, Factual Proffer, ECF No. 38.  In his Factual Proffer, Defendant admitted that he made material misrepresentations on Loan Application 2, and as a result, CNB disbursed the Defendant Funds into the STM Account on June 11, 2020.  *See id.* at 2-3.

27. On January 20, 2023, the Court sentenced Ohaebosim to time served.  *See* Minute Entry, 22-cr-20109-Williams, ECF No. 59; Judgment, ECF No. 69.

## IV. BASIS FOR FORFEITURE

28. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section… 1344 . . . or any offense constituting 'specified unlawful activity'" is subject to forfeiture to the United States.

29. A "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things: wire fraud in violation of 18 U.S.C § 1343.

30. Pursuant to 18 U.S.C. § 1343, it is unlawful

> to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

31.     Pursuant to 18 U.S.C. § 1344, it is unlawful to "knowingly execute[], or attempt to execute[], a scheme or artifice to defraud a financial institution."

## FIRST CLAIM
### Proceeds of Wire Fraud
### (18 U.S.C. § 981(a)(1)(C))

32.     The factual allegations in paragraphs 1 to 31 are re-alleged and incorporated by reference herein.

33.     As set forth above, the Defendant Funds constitute or were derived from proceeds traceable to a wire fraud offense in violation of 18 U.S.C. § 1343.

34.     Accordingly, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Proceeds of Bank Fraud
### (18 U.S.C. § 981(a)(1)(C))

35.     The factual allegations in paragraphs 1 to 31 are re-alleged and incorporated by reference herein.

36.     As set forth above, the Defendant Funds constitutes or were derived from proceeds traceable to a bank fraud offense in violation of 18 U.S.C. § 1344.

37.     Accordingly, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: <u>*/s/ Nicole Grosnoff*</u>
Nicole Grosnoff
Assistant United States Attorney
Court ID No. A5502029
Nicole.s.grosnoff@usdoj.gov
U.S. Attorney's Office
99 Northeast Fourth Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9294
Facsimile: (305) 536-4089

8

**VERIFICATION**

I, Karyn Calabrese, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Internal Revenue Service, Criminal – Investigation, and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent for the Internal Revenue Service.

Executed on this 8th of June 2023.

*Karyn Calabrese*

_____
Karyn Calabrese
Special Agent, IRS-CI